390 P.2d 856

STATE of Utah in the Interest of Maralee
LONDON, a minor, Robert Geary London
and Sandra London, Appellants,

v.

Barbara BELL, Guardian ad litem for
Jeanne Bell, Respondent.

No. 10002.

Supreme Court of Utah.

April 2, 1964.

Bean & Bean, Layton, for appellants.

Keith E. Murray, Ogden, for respondent.

HENRIOD, Chief Justice.

Appeal from a juvenile court case where it was adjudged that the natural mother of an infant had not abandoned it.[1] Affirmed.

This case, as usually eventuates where custody of a baby is involved, is a heartbreaker. Nonetheless, this court cannot let this overwhelm accepted natural laws and concepts.

---

1. We assume they were talking really about a "neglected" rather than an "abandoned" child, since the juvenile court has jurisdiction only over neglected, dependent or delinquent children. Title 55–10–5, Utah Code Annotated 1953. No one raised the point, hence we do not canvass the possibility of its urgency.

The baby here was born in California to an unwed mother of 14. Through connections, the appellants, obviously good people, were afforded an opportunity to assume custody and prospective adoption of a newly-born infant. Through friends, doctors, intermediaries and legal counsel, these good people spent considerable time, effort and expense to acquire the child as their own, and traveled to California to accomplish this desired result. The mother, but 14 years old, obviously subordinated her instincts to the importunities of what appears to have been conscientious but patriarchal and matriarchal well-wishers, including her stepmother. She signed a document that ambidexterously connoted an apparent relinquishment of her child within 48 hours of its birth, with a specific reservation, however, of consent to its adoption. There is evidence that the child mother, 14, grew to adulthood almost overnight, and the record reflects that for her age, this conclusion is substantiated by her intelligent response to questioning. On the other hand, the appellants obviously have a profound affection for the baby, unfortunate subject of this litigation.

Within a few weeks of the girl's referral of her child to appellants, she reneged on any dispositive divestation of custody and motherhood. She expressed such renegation, at the latest, within 10 months of the birth. By virtue of legal maneuvers, her demand for return of her baby has been delayed for about two years, during which time affections on both sides have crystallized and solidified. Therein is the heartbreak.

■ However, an examination of the record fully substantiates the juvenile court's conclusion that there was no abandonment of the child; and further, that the welfare of the baby would not better be served by anything other than its rearing by a natural parent, whose natural love and affections, in Lincolnese tradition, far outweigh any opportunity by strangers to furnish greater economic or perhaps religious advantages to a child. To decide otherwise would be to reject the traditional American humanities in favor of the totalitarian state.

■ By virtue of this decision, it is obvious that the tears of the litigants pretty much cancel themselves out, but in the plain interest of fair play, something should be done by the lower court to restore to appellants their out-of-pocket expense up to the time respondent made demand for return of her baby, but not as a condition to relinquishment of custody to respondent.

McDONOUGH, CALLISTER, CROCKETT and WADE, JJ., concur.